IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANGELBERT EVOULOU,<br>　　#67952-019,<br>　　　　MOVANT, | §<br>§<br>§<br>§ | |
| V. | § | CASE NO. 3:20-CV-594-L-BK |
| | § | (CRIMINAL NO. 3:15-CR-88-L-1) |
| UNITED STATES OF AMERICA,<br>　　RESPONDENT. | §<br>§<br>§ | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this civil action was referred to the undersigned United States magistrate judge for case management, including the issuance of findings and a recommended disposition on the *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 filed by Movant Angelbert Evoulou. As detailed herein, the motion should be **DENIED**.

**I. BACKGROUND**

At Evoulou's jury trial in 2016, evidence was introduced showing that Evoulou's coconspirator was selling stolen IRS-refund checks to an undercover IRS agent. ECF 82 at 41-42.[1] Evoulou's coconspirator approached the undercover agent about a refund check that was worth more than half a million dollars. ECF 82 at 44. They agreed to meet at an IHOP restaurant in Dallas to do the deal. ECF 82 at 60. Evoulou and five others then flew from Atlanta to Dallas for the meeting. ECF 82 at 38-39.

---

[1] Documents from Evoulou's criminal proceedings are cited as "ECF," while documents from his Section 2255 proceeding are cited as "Doc."

Two undercover agents, posing as buyers, were sitting at a table in the IHOP restaurant when the coconspirators arrived. ECF 82 at 61. Evoulou also sat at the table with the undercover agents and handed one of them a U.S. treasury check payable to the victim in the amount of $595,901.97. ECF 82 at 62-69. Evoulou also gave the agent documents that contained the victim's personal identifying information, including her social security number, so that the "buyer" could cash the check. ECF 82 at 73.

Evoulou was found guilty of four charges: (1) conspiracy, in violation of 18 U.S.C. § 371; (2) theft of public funds, in violation of 18 U.S.C. § 641; (3) transportation of a stolen security, in violation of 18 U.S.C. § 2314, and (4) aggravated identify theft, in violation of 18 U.S.C. § 1028A. ECF 64. Evoulou was sentenced to 57 months' imprisonment, to be followed by a year of supervised release. ECF 64. He appealed, and the United States Court of Appeals for the Fifth Circuit, following his counsel's submission of an *Anders* brief, dismissed the appeal as frivolous. *See United States v. Evoulou*, 747 F. App'x 987 (5th Cir. 2019) (granting the motion to withdraw filed with counsel's brief pursuant to *Anders v. California*, 386 U.S. 738 (1967)). Subsequently, Evoulou filed the instant Section 2255 motion. Doc. 2. The Government filed a response and Evoulou filed a reply. Doc. 11, Doc. 12. Thus, the Section 2255 motion is ripe for consideration.

**II. ANALYSIS**

After conviction and exhaustion or waiver of the right to direct appeal, the court presumes that a petitioner stands fairly and finally convicted. *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc)). Under 28 U.S.C. § 2255, a petitioner can collaterally challenge his conviction only

on constitutional or jurisdictional grounds.  *See United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

### A.  Claims Not Procedurally Defaulted

The Government argues that Evoulou's claims are procedurally defaulted because he could have, but did not, raise them on appeal.  Doc. 11 at 8.  The Government contends that Evoulou has "made no effort to show cause or prejudice to overcome his default."  Doc. 11 at 8.  The Government's factual premise is erroneous.

Although Evoulou's claims were not raised by appellate counsel in the *Anders* brief, Evoulou raised all the claims that he presents here in his Section 2255 motion in his *pro se* response to the *Anders* brief.  Doc. 12 at 1; *see also* No. 16-11385, Civ. Doc. 0051454930 (5th Cir. June 29, 2018).  Moreover, the Court of Appeals for the Fifth Circuit explicitly stated that it "reviewed counsel's [*Anders*] brief and the relevant portions of the record reflected therein, as well as Evoulou's response and supplemental responses."  EFC 99 at 1-2.  Under this procedure, the issues raised here were indeed presented for review on direct appeal.  Neither Evoulou's counsel's failure to raise the issues presented here in the *Anders* brief nor the appellate court's ultimate conclusion upon review that the appeal presented "no nonfrivolous issue for appellate review," *Id*. at 2, equates to procedural default on Evoulou's part.

### B.  Prosecutorial Misconduct

Evoulou claims that the prosecutor made improper comments during closing argument that prejudiced him.  Doc. 2 at 2-3.  Specifically, he claims that the prosecutor gave the jury improper legal opinions that there was a conspiracy, that Evoulou was a coconspirator, and that he was guilty beyond a reasonable doubt.  *See* Doc. 2 at 2-3; *see also* ECF 84 at 16-17.

"Prosecutorial misconduct is not a ground for [habeas] relief unless it casts serious doubt upon the correctness of the jury's verdict." See *Styron v. Johnson*, 262 F.3d 438, 449 (5th Cir. 2001). For alleged misconduct based on the prosecutor's argument to the jury, a petitioner is entitled to relief only where "the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "Only where improper prosecutorial comments substantially affect the defendant's right to a fair trial do they require reversal." *Styron*, 262 F.3d at 449.

Evoulou has not established the prosecutor's comments were inappropriate. Counsel is allowed to "state his contention as to the conclusions that the jury should draw from the evidence. Therefore, an attorney's statements that indicate his opinion or knowledge of the case as theretofore presented before the court and jury are permissible if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence." *United States v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978) (citing *United States v. McDowell*, 539 F.2d 435, 438 (5th Cir. 1976); *United States v. Wayman*, 510 F.2d 1020, 1028 (5th Cir.), *cert denied*, 423 U.S. 846 (1975); *United States v. Dawson*, 486 F.2d 1326, 1331 (5th Cir. 1973)). And that is clearly what happened here. The prosecution summed up its evidence against Evoulou and argued that he was a coconspirator and guilty beyond a reasonable doubt. See ECF 84 at 15-22 (Government's closing argument).

Nor has Evoulou shown that the prosecution's comments, even assuming they were inappropriate, cast serious doubt upon the correctness of the jury's verdict. See *Styron*, 262 F.3d at 449. As shown below, there was ample evidence to convict Evoulou on all charges. Evoulou's prosecutorial misconduct claim lacks merit.

### C. Judicial Misconduct

Evoulou argues that the district court was biased against him because the district court ordered the prosecution to lay the foundation for an excited utterance following the defense counsel's objection that the statement at issue was hearsay. *See* Doc. 2 at 3-4. Evoulou references the following exchange:

| | |
|---|---|
| Witness: | Yeah, at some point the entrance and exit to the kitchen was directly behind me and at some point[,] a waitress came over not panicked, but kind of came over and excitedly uttered. |
| Defense: | Objection; hearsay. |
| Prosecution: | It is an excited utterance, Your Honor. |
| The Court: | Lay the foundation for it. |
| Prosecutor: | Yes, Your Honor. |

ECF 82 at 124-25.

To secure relief on a due process claim premised on the judge's bias, a petitioner is required to establish that a genuine question exists concerning the judge's impartiality. *Bigby v. Dretke*, 402 F.3d 551, 558-59 (5th Cir. 2005). All cases should begin with the presumption that the judicial officer is unbiased, *Schweiker v. McClure*, 456 U.S. 188, 195 (1982), and "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)).

It is unclear how the district court's comment that the prosecution must lay the foundation for a hearsay exception evidences bias. If Evoulou is suggesting that the district court's failure to sustain the hearsay exception shows bias, he is mistaken. Again, such rulings, alone, "almost never" show bias, and Evoulou does not explain why this case should be the

extreme exception. *See Liteky*, 510 U.S. at 555. His judicial bias claim is meritless and should be dismissed.

### D. Authentication of Audio Recording and Transcript

Evoulou claims that he is entitled to habeas relief because the district court admitted audio evidence and an accompanying transcript that were not properly authenticated. *See* Doc. 2 at 4-5. The audio evidence was one of the undercover agent's cell-phone recording of the IHOP meeting between Evoulou, the other coconspirators, and undercover agents during which the undercover agents were presented with a stolen IRS-refund check and identifying information of the victim for purchase. *See* ECF No. 2 at 4; ECF 82 at 83-87.

"Authentication is a condition precedent to admission that is satisfied when a party presents 'evidence sufficient to support a finding that the matter in question is what a proponent claims.'" *United States v. Chaney*, 299 F. App'x 447, 451 (5th Cir. 2008) (per curiam) (quoting FED. R. EVID. 901). To illustrate acceptable means of authenticating evidence, Rule 901(b) lists testimony of a witness with knowledge and, for identifying a voice, an "opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." *See id.* at 901(b)(1), (5).

Here, the undercover agent testified that he made the recording (ECF 82 at 83) and that he was present for the entire conversation captured on it, (ECF 82 at 86). As for the transcript, the agent testified that he listened to the recording at least seven times and that the transcript was a fair and accurate representation of the conversation that took place between the arrival of Evoulou and the other coconspirators and their subsequent arrest. ECF 82 at 84, 86. The agent also testified that he could clearly hear Evoulou during the meeting and that the transcript was an accurate depiction of what Evoulou said during that meeting. ECF 82 at 85-86. This was all that

was necessary to authenticate the audio recording and transcript. *See*, *e.g.*, *United States v. Lance*, 853 F.2d 1177, 1181 (5th Cir. 1988) (recordings "adequately authenticated to be admissible" where "law enforcement agents who participated in the taped conversations testified that, according to their memories, the audio and video tapes contained accurate recordings of the conversations that occurred."); *United States v. Thompson*, 130 F.3d 676, 683-84 (5th Cir. 1997) (transcripts of recordings properly authenticated by transcript preparer's testimony that he "had listened to the tape several times and that, as a result, he had updated his transcript repeatedly").

Evoulou mistakenly argues that an expert or "non-government third party witness" was required to "decipher" his voice on the tape. *See* Doc. 2 at 5. Again, as Rule 901(b) provides, for voice identification, opinion testimony by someone who heard the voice "at any time under circumstances connecting it with the alleged speaker" can be used for authentication. *See*, *e.g.*, *United States v. Simms*, 351 F. App'x 64, 69 (6th Cir. 2009) (rejecting argument from defendant that his voice was not properly identified at trial when the identifying witness had not heard the defendant's voice in over two years because the federal rule only requires that the identifier has heard the voice of the alleged speaker "at any time").

**E.  Sufficiency of the Evidence**

Evoulou claims that there was insufficient evidence to support his convictions. Doc. 2 at 5-11. In assessing whether evidence was sufficient to sustain a jury's verdict in a criminal trial, the Court views "the evidence in the light most favorable to government, with all reasonable inferences and credibility determinations made in the government's favor." *United States v. Oti*, 872 F.3d 678, 687 (5th Cir. 2017) (citation omitted). The relevant question is whether "any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Steiner v. United States*, 940

F.3d 1282, 1288 (11th Cir. 2019) (confirming that this standard applies in the Section 2255 context) (citing *Ginsburg v. United States*, 909 F.2d 982, 990 (7th Cir. 1990); *United States v. Ware*, 416 F.3d 1118, 1120-21 (9th Cir. 2005)). All credibility choices and conflicting inferences are to be resolved in favor of the factfinder. *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999), *cert denied*, 531 U.S. 822 (2000).

### *i. 18 U.S.C. § 371*

Evoulou was convicted of violating 18 U.S.C. § 371, conspiracy to commit an offense or to defraud the United States. To establish a conspiracy under 18 U.S.C. § 371, the government must prove beyond a reasonable doubt the existence of an agreement between two or more people to violate a law of the United States and that the any one of the conspirators committed an overt act in furtherance of that agreement. *See*, *e.g.*, *United States v. Faulkner*, 17 F.3d 745, 768 (5th Cir. 1994), *cert denied*, 513 U.S. 870 (1994); *United States v. Chaney*, 964 F.2d 437, 449 (5th Cir. 1992). The government must also prove that the defendant knew of the conspiracy and voluntarily participated in it. *Chaney*, 964, F.2d at 449.

There was sufficient evidence to convict Evoulou of violating 18 U.S.C. § 371. Specifically, there was evidence that Evoulou, after traveling from Atlanta to Dallas with the stolen check, arrived at IHOP with the coconspirators, sat down at the table, and handed the agent the stolen check along with documents that contained the victim's identifying information, including her social security number. ECF 82 at 60-72. This testimony supports the jury's finding that Evoulou knowingly and voluntarily joined the conspiracy to steal public funds and transport stolen securities, in violation of 18 U.S.C. § 641, and 18 U.S.C. § 2314 respectively. Contrary to Evoulou's argument, the jury could have determined that this was not simply a case of Evoulou's presence during acts in furtherance of conspiracy with which he was not involved

or his mere association with other conspirators. *See*, *e.g.*, *United States v. Perry*, 624 F.2d 29, 31 (5th Cir. 1980) (mere presence or association is not sufficient to establish membership in a conspiracy).

As for Evoulou's argument that the undercover agent's testimony is not believable because Evoulou's fingerprints were not found on the stolen check or other documents containing the victim's social security number and other tax information, "the jury is the ultimate arbiter of the credibility of a witness," and "testimony generally should not be declared incredible as a matter of law" unless it pertains to matters "that the witness physically could not have observed or events that could not have occurred under the laws of nature." *United States v. Osum*, 943 F.2d 1394, 1405 (5th Cir. 1995). That is not the case here, and jury was entitled to believe the undercover agent's testimony that Evoulou handed him the stolen check and other documents.[2]

### ii. 18 U.S.C. § 641.

Evoulou was also convicted of theft of public funds in violation of 18 U.S.C. § 641. To prove a violation of Section 641, the Government was required prove: (1) that the money or property belonged to the United States Government; (2) that the defendant stole or converted such money or property for the defendant's own use or for the use of another; and (3) that the defendant did so knowing the money or property was not his and with the intent to deprive the

---

[2] Evoulou also argues that 18 U.S.C. § 371 requires that the United States be the "intended victim of the offense." Doc. 2 at 6. He is wrong. Section 371 contains both a general, federal conspiracy offense, and a specific offense where the object of the conspiracy is to defraud the United States. *See*, *e.g.*, *United States v. Brandon*, 17 F.3d 409, 422 (1st Cir. 1994) ("18 U.S.C. § 371 creates two distinct criminal offenses: conspiracies to commit offenses against the United States and conspiracies to defraud the United States.") (citing *United States v. Haga*, 821 F.2d 1036, 1039 (5th Cir. 1987)). "The 'any offense' clause of § 371 ('to commit offenses against the United States') is aimed at conspiracies to violate the laws of the United States." *Id.* Thus, there need only be a conspiracy to violate the laws of the United States, not necessarily one to defraud the United States.

owner of the use or benefit of the property or money. *United States v. Aguilar*, 967 F.2d 111, 112 (5th Cir. 1992).

Evoulou claims that the stolen check, which had not been cashed or delivered to the victim, was the property of the victim and not the United States. However, a stolen treasury check remains the property of the United States before it is received by the named payee. *See, e.g., United States v. Forcellati*, 610 F.2d 25, 31 (1st Cir. 1979) ("check as a piece of paper never genuinely ceases to be the property of the issuer"); *United States v. O'Kelley*, 701 F.2d 758 (8th Cir. 1983) (holding that a Treasury check that had been delivered to its intended payee and then later stolen by the defendant from the payee remained government property).

Evoulou's claim that there is no evidence that he "appropriated government property for his own use," Doc. 2 at 8, likewise lacks merit. Evidence was presented at trial that Evoulou had a stolen check for purposes of selling it to another party, who would then cash it, and the jury could infer that he did so for his own use—i.e. to ultimately sell the check and get a cut of the money. *See* ECF 82 at 60-72.

### *iii. 18 U.S.C. § 2314*

Evoulou 's conviction for transporting a stolen security, in violation of 18 U.S.C. § 2314, was likewise supported by sufficient evidence. "To establish that offense, the government must prove: (1) the interstate transportation of (2) goods, merchandise, wares, money, or securities valued at $5,000 or more…(3) with knowledge that such items have been stolen, converted, or taken by fraud." *United States v. Danhach*, 815 F.3d 228, 235 (5th Cir. 2016) (internal quotation marks omitted).

Here, the Government presented evidence that Evoulou and his coconspirators took an interstate flight from Atlanta to Dallas in possession of a stolen IRS treasury check payable to the

victim. ECF 82 at 38-39, 53-54, 60-73. Again, Evoulou argues that his fingerprints were not on the stolen check and that the Government failed to introduce existing video footage corroborating its version of events. Doc. 2 at 9. But the undercover agents testified that Evoulou handed one of them the stolen check. ECF 82 at 67-68, 139. The jury is entitled to believe a witness unless the testimony is so incredible that it defies physical laws. *United States v. Lerma*, 657 F.2d 786, 789 (5th Cir. 1981), *cert. denied*, 455 U.S. 921 (1982). Evoulou has not established that here.

### *iv. 18 U.S.C. § 1028A*

Evoulou was also convicted of aggravated identity theft, in violation of 18 U.S.C. § 1028A. To establish aggravated identity theft, the government must prove that the defendant (1) knowingly (2) used the means of identification of another person (3) without lawful authority (4) during and in relation to an enumerated offense, including theft of public funds. *See United States v. Biyiklioglu*, 652 F. App'x 274, 282 (5th Cir. 2016) (citations omitted).

Here, an undercover agent testified that Evoulou handed him the IRS check in question made out to the victim, along with documents that contained the victim's social security number and "other tax information." ECF 82 at 67-71. Evoulou again argues that his fingerprints were not recovered from the pertinent documents. Again, for the reasons discussed above, the undersigned disagrees. The jury was entitled to believe the direct evidence that Evoulou handed the stolen check and other documents to the undercover agent.

### *v. 18 U.S.C. § 2*

Finally, the evidence was more than sufficient to support the jury's implicit findings that Evoulou aiding and abetted others in the commission of the substantive offenses of theft of public funds (18 U.S.C. § 641), transporting a stolen security (18 U.S.C. § 2314), and aggravated

identity theft (18 U.S.C. § 1028A), were also supported by sufficient evidence. *See* ECF 64. A defendant aids and abets a substantive offense when he "associates with the criminal activity, participates in it, and acts to help it succeed." *United States v. Delagarza-Villarreal*, 141 F.3d 133, 140 (5th Cir. 1997).

As discussed *supra*, the Government's evidence demonstrated that Evoulou traveled with the other coconspirators from Dallas to Atlanta to sell a stolen check, arrived at the IHOP restaurant with the other coconspirators, and handed one of the undercover agents a stolen check along with documents that contained the victim's identifying information, including her social security number. ECF 82 at 38-39; 53-54; 60-73. This evidence was more than sufficient to establish that Evoulou associated with the criminal activity, participated in it, and acted to help it succeed.

### F.  Ineffective Assistance of Appellate Counsel

Evoulou claims that his appellate counsel was ineffective for filing a deficient *Anders* brief instead of arguing the issues that he presents in this Section 2255 motion. Doc. 2 at 11-15. He also argues that his appellate counsel generally failed to communicate with him and failed to provide him with any opportunity to participate or "have input in his appeal." Doc. 2 at 15.

To establish ineffective assistance of counsel, a movant must demonstrate counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id*. at 697. To prove the deficient-performance prong of the *Strickland* test, the movant must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. at 687. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id*. at 688. That

said, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* Moreover, to prove prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Evoulou has wholly failed to demonstrated prejudice resulting from his appellate counsel's supposed ineffectiveness; thus, the Court need not consider whether counsel's performance was deficient. As discussed above, Evoulou's arguments, the ones he claims his appellate counsel should have made, are meritless. He has not shown that he would have obtained appellate relief had his counsel argued the claims presented in his Section 2255 motion. *See*, *e.g., Rumfield v. United States*, No. 3:18-CV-3235-B-BK, 2020 WL 1479770, at *3 (N.D. Tex. Feb. 4, 2020), *rec. accepted* 2020 WL 1557899 ("Because Rumfield had no non-frivolous issue that he could have presented on appeal, he cannot show that appellate counsel rendered constitutionally ineffective assistance."). Moreover, under the *Anders* procedure, Evoulou had the opportunity to present these same issues to the Court of Appeals for the Fifth Circuit which, upon review, determined them frivolous.

### III.   CONCLUSION

Evoulou's Section 2255 motion should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on August 22, 2022.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).